THREE JUVENILES & others[1] *vs.* COMMONWEALTH.

Suffolk. May 5, 1983. — November 7, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Witness,* Privilege. *Parent and Child,* Testimony by child against parent.

There is no general privilege permitting a minor child to refuse to testify in criminal proceedings against a parent. [359-364] O'CONNOR, J., with whom HENNESSEY, C.J., and LYNCH, J., join, dissenting.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 13, 1983.

The case was reported by *Lynch, J.*

*Brian J. McMenimen (Constance L. Rudnick* with him) for the plaintiffs.

*Daniel J. O'Connell, III,* for the interveners.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. We are presented for the first time with the question whether a minor child may be compelled to appear and to testify, over the objection of both the child and the child's parents, before a grand jury that is investigating the possible murder of a nonfamily member by the child's father. We conclude that, in these circumstances, a minor child has no privilege to refuse to appear. Further, the child has no privilege to refuse to testify as to what he may have seen or heard, except perhaps as to confidential communications between the child and the parents, a question we need not decide on this record.

The plaintiffs, twelve, fourteen, and fifteen years of age, live with their parents. The children were subpoenaed to appear on April 4, 1983, to testify before a grand jury that

---

[1] Their parents John and Jane Doe, interveners.

was investigating the possible murder of a missing woman. The woman was an acquaintance of their father, and the investigation had focused on him. Neither the children nor their parents wish the children to appear or to testify. On April 4, the children moved to quash the subpoenas, claiming a family or parent-child privilege not to testify. A judge of the Superior Court denied the motion, but stayed the appearance of the children before the grand jury until April 14.

On April 13, the children filed a petition under G. L. c. 211, § 3, in the Supreme Judicial Court for the county of Suffolk seeking reversal of the denial of their motion. A single justice allowed the parents to intervene. The Commonwealth submitted an affidavit to the single justice in support of its contention that the children's expected testimony would be relevant to the grand jury investigation. The affidavit, which has been impounded, states in part that, "there is reason to believe that [the missing woman] was murdered on the evening of March 5 . . . and that an examination by the Grand Jury of the above mentioned children . . . as to their observations of the comings and goings of their parents and in particular [the father and the missing woman] during this critical period of time, as well as any conversations they may have witnessed between them could . . . provide further evidence pertaining to her murder." The single justice further stayed the witnesses' appearances, and reserved and reported the case, without decision, for determination by the full court, presenting three questions for our consideration.

The case was argued before the full bench on May 5, 1983, and on August 4, 1983, we issued an order which is set forth in the margin.[2] We concluded that (1) the motion

---

[2] The order listed the questions reported and gave answers as follows:

"1. Whether the trial court properly denied the Petitioners' Motion to Quash Subpoena compelling [the] appearance and testimony [of the plaintiffs] before the Grand Jurors for Norfolk County?

"2. With respect to an unemancipated minor child, does the United States Constitution, or the Constitution and laws of the Commonwealth,

Three Juveniles *v.* Commonwealth.

judge properly denied the children's motion to quash the subpoena; (2) the children had no constitutional or other right not to appear and testify before the grand jury, leaving open, however, the question of their obligation to testify concerning confidential communications with their parents; and (3) the parents had no constitutional or other right, alone or in conjunction with their children, to prevent their children from appearing and testifying.

Testimonial privileges "are exceptions to the general duty imposed on all people to testify." *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5 (1982). *Matter of Pappas*, 358 Mass. 604, 607-609 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972). Such privileges diminish the evidence before the court (*Commonwealth* v. *Corsetti, supra*), and contravene the fundamental principle that "the public . . . has a right to every man's evidence." *United States* v. *Bryan*, 339 U.S. 323, 331 (1950), quoting 8 J. Wigmore, Evidence § 2192, at 64 (3d ed. 1940). As such, they must be strictly construed (see *Commonwealth* v. *Corsetti, supra*), and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a

establish a privilege, a disqualification, or a right not to be compelled to appear and testify before a Grand Jury when a parent of such minor is the focus of the Grand Jury's Investigation?

"3. On the facts of the case at bar, do the parents of unemancipated minor children enjoy rights independent of or in conjunction with those of their children, under the United States Constitution or the Constitution and laws of the Commonwealth, which enable the parents to assert a privilege or otherwise prevent such children from being compelled to appear and testify before a Grand Jury?

"NOW, THEREFORE, a majority of this court answers the questions as follows:

"1. Yes.

"2. No. (We do not rule, however, on any issue concerning alleged confidential communications between the parents and their children.)

"3. No.

"Opinion or opinions to follow. A majority of the court suggests that, although this Court has total confidence in the integrity and competence of present counsel, a Justice of the Superior Court should consider, in the interests of all concerned, selection and appointment by the Court of a guardian ad litem and counsel for the children to serve at public expense."

public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Elkins* v. *United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting). Except for the privilege against self-incrimination (*Branzburg* v. *Hayes*, 408 U.S. 665, 689-690 [1972]; *Matter of Roche*, 381 Mass. 624, 634 n.11 [1980]), and a limited "executive privilege" (*United States* v. *Nixon*, 418 U.S. 683, 709-710 [1974]), testimonial privileges have generally not been based on a constitutional right. The question "we must decide [is] whether the privilege against adverse [parent-child] testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Trammel* v. *United States*, 445 U.S. 40, 51 (1980). See *Matter of Pappas, supra* at 609, quoting Professor Edmund M. Morgan in his preface to the American Law Institute's Model Code of Evidence (1942).

We are, of course, free to identify a privilege of a child not to testify against his or her parent. Such a privilege could be based on common law or constitutional principles.[3] In recent years, however, courts have tended to leave the creation of evidentiary privileges to legislative determination.

We have recognized common law testimonial privileges, as a matter of public policy, such as the attorney-client privilege (*Foster* v. *Hall*, 12 Pick. 89, 97 [1832]), and the government informer privilege (*Worthington* v. *Scribner*, 109 Mass. 487, 489, 493 [1872]). Some members of this

---

[3] Under Rule 501 of the Proposed Massachusetts Rules of Evidence, this court would have been restricted to recognizing only those privileges "provided by constitution or statute or by . . . rules promulgated by" this court. The privilege asserted in this case is not provided by statute or court rule and, if the proposed rules had been adopted, the privilege could have been provided in this case only by constitutional requirement. The parallel Federal rule (Fed. R. Evid. 501), except where State law supplies the evidentiary rule, allows for case law development of privileges "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

court have expressed a willingness to consider recognizing a news reporter's privilege. See *Matter of Roche,* 381 Mass. 624, 638-640 (1980). The Legislature has also recognized certain testimonial privileges. See G. L. c. 233, § 20A (certain communications to a clergyman); G. L. c. 233, § 20B (certain communications between a psychotherapist and a patient); G. L. c. 112, § 135 (certain communications to a social worker). All these statutory and common law privileges involve communications made in confidential circumstances. They do not involve disqualifications from testifying.

The Legislature has recognized a testimonial disqualification as to certain private conversations between spouses. G. L. c. 233, § 20, First. It has granted one spouse the right to elect not to testify against the other spouse in a criminal proceeding (except in a proceeding relating to child abuse or in an action for nonsupport). G. L. c. 233, § 20, Second, as appearing in St. 1983, c. 145. There is, however, no privilege for a spouse not to testify against the other spouse in a civil action, even if that testimony may be highly destructive of the marital relationship. The Legislature has not chosen to establish a parent-child testimonial privilege or disqualification. It has, however, been willing to recognize problems presented to family members by criminal conduct of another family member. See G. L. c. 274, § 4 (exemption of certain family members from criminal liability as accessories after the fact for harboring a family member after his commission of a felony).

In our order of August 4, 1983, we expressly declined to rule on the question of a privilege as to "alleged confidential communications between the parents and their children." We adhere to that determination. Although there is limited support for a testimonial privilege to protect confidential communications from child to parent, the weight of authority is against it.[4] Because a parent does not need the

---

[4] An intermediate appellate court in New York has said that parents have a right of privacy under the Constitution of the United States to de-

advice of a minor child in the same sense that a child may need the advice of a parent, the case for a testimonial privilege as to confidential communications from parent to child seems weaker than the case as to such a communication from child to parent. We are aware of no State that, through legislation or by a decision of its court of last resort, has recognized any privilege that would protect a child from testifying against a parent concerning the parent's confidential communications to the child. In any event, the case before us does not currently involve, and may never involve, the question of confidential communications between parent and child.[5]

A clear majority of the courts that have considered whether there is a general privilege of a child not to testify against his or her parent have found no such privilege. Understandably, there should be no privilege when a parent is charged with physically abusing the child (*Hunter* v. *State*, 172 Ind. App. 397, 410, cert. denied, 434 U.S. 906

cline to disclose information told to them by their minor child "in the context of the familial setting for the purpose of obtaining support, advice or guidance," if the child does not want that information disclosed. *Matter of A & M*, 61 A.D.2d 426, 433-434 (N.Y. 1978). See *Matter of Mark G.*, 65 A.D.2d 917 (N.Y. 1978) (mem.). One judge in New York has said that the right of a parent and child to prevent disclosure of confidential communications from the child to the parent is founded on both the Federal and New York Constitutions and is broad enough to encompass confidential statements made to his father by a twenty-three-year-old son who was not living at home. *People* v. *Fitzgerald*, 101 Misc. 2d 712, 716, 718 (N.Y. Westchester County Ct. 1979). On the other hand, several courts have rejected the idea of a privilege to exclude confidential communications to a parent from a child. *In re Terry W.*, 59 Cal. App. 3d 745, 748-749 (1976). *Cissna* v. *State*, 170 Ind. App. 437, 439-440 (1976). *Matter of a Grand Jury Subpoena Served Upon Kinoy*, 326 F. Supp. 400, 406 (S.D. N.Y. 1970).

[5] The impounded affidavit indicates that the Commonwealth was interested in the children's observations of the comings and goings of the parents and the missing woman and in any conversations that the children may have heard between the father and the missing woman. If any child does appear before the grand jury and the subject of confidential communications between parent and child does arise, the question of a testimonial privilege as to such communications can be raised and can be dealt with in the specific circumstances presented.

Three Juveniles v. Commonwealth.

[1977]), or where a family member may otherwise be the victim of wrongdoing. Where the focus of inquiry involves the conduct of a parent, courts have almost universally declined to recognize a privilege. See *United States* v. *Jones*, 683 F.2d 817, 818-819 (4th Cir. 1982); *United States* v. *Penn*, 647 F.2d 876, 885 (9th Cir. 1980) ("There is no judicially or legislatively recognized general 'family' privilege"); *In re Grand Jury Proceedings*, 647 F.2d 511, 512-513 (5th Cir. 1981) (per curiam); *State* v. *Gilroy*, 313 N.W.2d 513, 516 (Iowa 1981). We are aware of only one opinion that has recognized not only a privilege of a child not to testify against his father as to confidential communications but also a privilege not to testify against his father at all in a criminal proceeding. *In re Grand Jury Proceedings Witness: Agosto*, 553 F. Supp. 1298 (D. Nev. 1983). This prolix opinion of a single Federal judge demonstrates the judge's concern for the preservation of the American family but cites no authority or persuasive policy reason for such an extreme position. It is this extreme position — an absolute privilege not to testify at all — that we reject.[6]

---

[6] In recent years, perhaps because of the increased application of traditional constitutional and other rights in juvenile proceedings, the subject of establishing a parent-child privilege has received favorable attention. See Coburn, Child-Parent Communications: Spare the Privilege and Spoil the Child, 74 Dick. L. Rev. 599 (1969); Stanton, Child-Parent Privilege for Confidential Communications: An Examination and Proposal, 16 Fam. L.Q. 1 (1982); Comment, From the Mouths of Babes: Does the Constitutional Right of Privacy Mandate a Parent-Child Privilege?, 1978 B.Y.U. L. Rev. 1002; Comment, The Child-Parent Privilege: A Proposal, 47 Fordham L. Rev. 771 (1979); Comment, Confidential Communication Between Parent and Child: A Constitutional Right, 16 San Diego L. Rev. 811 (1979); Note, Recognition of a Parent-Child Testimonial Privilege, 23 St. Louis U.L.J. 676 (1979). Contra, Note: Questioning the Recognition of a Parent-Child Testimonial Privilege, 45 Alb. L. Rev. 142 (1980). However, although these various commentators have almost universally favored adoption of a testimonial privilege as to confidential communications from a minor child to his or her parent, none has argued for a privilege as to communications made by a parent to a child and none has espoused establishing a child's privilege not to testify against his parent at all.

In the last analysis, the question comes down to a balancing of the public's interest in obtaining every person's testimony against public policy considerations in favor of erecting a testimonial privilege in the circumstances. We have put to one side the question of confidential communications between parent and child and thus are concerned here only with what the children may have seen and heard in nonconfidential circumstances. Confidential communications aside, we see no basis for concluding that a constitutional right of privacy requires that the children and their parents be given a testimonial privilege. Neither Congress nor the Legislature of any State has seen fit to adopt a rule granting a privilege to one family member not to testify against another (except between spouses) or even to grant a privilege not to testify as to confidential communications between family members (again, except as to spouses). Courts have been generally reluctant to identify any such privilege, and, as far as we can tell from reported decisions, only one judge in this country has found an absolute privilege of a child not to testify against a parent as to nonconfidential matters. Society's interest in the preservation of the family does not require such a broad rule, either as a matter of common law privilege or constitutional right. The exclusion of testimony concerning the parents' nonconfidential words and deeds would not promote "sufficiently important interests" so as "to outweigh the need for probative evidence in the administration of criminal justice." *Trammel* v. *United States*, 445 U.S. 40, 50-51 (1980). In the circumstances of this case, the Commonwealth's interest in obtaining all relevant information concerning the disappearance of a young woman who may have been murdered must predominate over generalizations favoring the preservation of the American family through barring a child from testifying about nonconfidential matters involving his or her parent.


O'CONNOR, J. (dissenting, with whom Hennessey, C.J., and Lynch, J., join). The court has declined to create a tes-

timonial privilege that would protect unemancipated minor children from being coerced by the State to appear and to testify, over the objection of the children and their parents, before a grand jury that is investigating the possible murder · of a nonfamily member by the children's father. The court reaches this conclusion despite its acknowledgment that it is "of course, free to identify a privilege of a child not to testify against his or her parent." *Supra* at 360.

Correctly recognizing that its task is to balance the public's interest in obtaining every person's testimony against public policy considerations in favor of erecting such a testimonial privilege, *supra* at 364, the court concludes that in the circumstances presented by this case a minor child has no privilege to refuse to appear before a grand jury or to refuse to testify as to what he or she may have seen or heard, except perhaps as to confidential communications between the child and the parents. *Supra* at 357. The court reasons that erecting the privilege "would not promote 'sufficiently important interests' so as 'to outweigh the need for probative evidence in the administration of criminal justice.' *Trammel* v. *United States*, 445 U.S. 40, 50-51 (1980)." *Supra* at 364. I respectfully, but firmly, disagree with the court's reasoning and with its conclusion. The violence done to the child, the damage to family unity, and the consequent injury to society that may result from the State's coercing an unemancipated minor to testify against a parent in the circumstances of this case are too high a price to pay for the enforcement of our criminal laws.

Although the court reasons that the privilege would not promote sufficiently important interests to warrant depriving the Commonwealth of evidence that might aid its investigation, the opinion fails to compare adequately the values that compete for protection by the court. Legitimate concerns about the impact of the court's determination on children, families, and society are summarily dismissed. Instead, the court relies on what it perceives to be the weight of authority against judicial creation of a parent-child testimonial privilege, and the lack of substantial precedent favor-

ing such a privilege. *Supra* at 362-363. There is little help-
ful precedent. Such precedent as there is provides no justifi-
cation for the court's failure to create a parent-child testimo-
nial privilege in this case. A proper balancing of the values
that are involved yields the conclusion that the privilege for
which the plaintiffs contend should have been granted.

The court has ruled that a child must appear before a
grand jury and may be required to testify in the circum-
stances of this case. The significance of the court's decision,
however, would appear not to be limited to the circum-
stances of this case. The fair import of the decision is that,
with the possible exception of confidential communications
between parents and their children, and in the absence of
concerns about self-incrimination, this Commonwealth
does not recognize the right of a child to refuse to testify
before a grand jury against his or her parent with respect to
observations made inside or outside the home, having possi-
ble bearing on any kind of crime, violent or nonviolent,
"white collar" or otherwise.

The State should not make unrealistic demands on its citi-
zens, especially its children. A requirement that an un-
emancipated minor child, living with his or her parents,
must incriminate one or both of them is an unrealistic de-
mand, at least when a family member is not a victim of the
crime under investigation. The demand is unrealistic be-
cause it is insensitive to the needs of children, and to the
nature of the normal relationship between children and
their parents, involving, as it does, love, trust, loyalty, and
dependency. This court should recognize a public policy
against imposing on the conscience of a child responsibility
for incriminating his or her parent. Society's interest in its
children should be recognized as sufficiently important to
outweigh the need for probative evidence in the administra-
tion of criminal justice in the circumstances presented by
this case.

Not only does society have an interest in children's being
free from unreasonable public demands, but society also has
an interest in fostering the unity of the family. "[T]he insti-

tution of the family is deeply rooted in this Nation's history and tradition." *Moore* v. *East Cleveland,* 431 U.S. 494, 499, 503-504 (1977). The Massachusetts Legislature has declared that "the policy of the commonwealth [is] to direct its efforts . . . to the strengthening and encouragement of family life." G. L. c. 119, § 1, as amended by St. 1972, c. 785, § 5. The Legislature has granted one spouse the right not to testify against the other spouse in a criminal proceeding except in child abuse and nonsupport cases. G. L. c. 233, § 20. General Laws c. 274, § 4, exempts specified family members from criminal liability as accessories after the fact to the commission of a felony by other members of the same family. These statutes demonstrate a legislative awareness that there are basic human instincts to protect the members of one's family, even from the State, and that the State should respect those instincts, despite the possible adverse effect on law enforcement. These statutes also demonstrate a legislative judgment that in some circumstances the important interests of society in obtaining every person's evidence must give way to the recognition and protection of marital and family integrity. If society's interest in the enhancement of the marriage relationship justifies a spouse's privilege not to testify against a spouse in a criminal proceeding, a corresponding interest in family integrity must justify, with at least equal force, an unemancipated minor's privilege not to testify in the circumstances presented by this case. Furthermore, if public policy dictates that family members should be protected from criminal liability for shielding other family members from apprehension for felonious conduct, all the more does public policy call for the grant to a child of a privilege not to testify against his or her parent in the circumstances of this case.

That the Legislature has not seen fit to grant such a privilege is not an adequate answer. It may be that the necessity for such legislation has not come to the Legislature's attention. Perhaps prosecutors have heretofore refrained from forcing the issue. In any event, this court has the power to create testimonial privileges in appropriate circumstances.

For the reasons I have stated, and for the additional reason that the enforceability of a rule requiring a child to testify against his or her parent is very doubtful, I believe that the court's order was erroneous.

I comment briefly on the precedents cited by the court. Nearly all of the cases which have rejected claims of a parent-child privilege can be distinguished from this case. The courts that decided *In re Terry W.*, 59 Cal. App. 3d 745 (1976), *Cissna* v. *State*, 170 Ind. App. 437 (1976), followed by *Hunter* v. *State*, 172 Ind. App. 397, cert. denied, 434 U.S. 906 (1977), and *State* v. *Gilroy*, 313 N.W.2d 513 (Iowa, 1981), reasoned that only the Legislature, and not the court, was authorized to grant testimonial privileges. In this Commonwealth, however, there is no bar to the creation of a common law privilege in appropriate circumstances, so those cases give us no assistance whatsoever.

Cases in which the court has considered and rejected a general common law privilege of a child not to testify against his or her parent are significantly distinguishable on their facts from the present case. In *Matter of a Grand Jury Subpoena Served Upon Kinoy*, 326 F. Supp. 400 (S.D.N.Y. 1970), the family member about whom the grand jury sought information was not a target of the grand jury investigation, but was sought in connection with an investigation of another individual. Also the parent and child did not live together. That is unlike the present case in which the grand jury investigation has focused on the father, with whom the children live. In *United States* v. *Jones*, 683 F.2d 817, 819 (4th Cir. 1982), the court held that "[u]nder the circumstances, namely an emancipated, adult child's testimony which only arguably would be adverse to his father, limited to questions unrelated to his familial association with his parent, and involving no communication between father and son, we are satisfied that there simply is no privilege such as Jones has asserted. *See In re Kinoy*, 326 F. Supp. 400, 406 (S.D.N.Y. 1970)." In *United States* v. *Penn*, 647 F.2d 876 (9th Cir. 1980), a majority of the Court of Appeals, sitting en banc, reversed a Federal District Court or-

der granting the defendant's motion to suppress a jar of heroin taken from the defendant's backyard. The Court of Appeals held that the conduct of the police in offering the defendant's five year old son $5 if he would show them the location of the heroin did not violate due process, and that the seizure of the heroin did not violate the Fourth Amendment to the Constitution of the United States. At the conclusion of its opinion, the court considered the defendant's claim of privilege. It stated simply: "There is no judicially or legislatively recognized general 'family' privilege . . . and we decline to create one here." Id. at 885. That case did not involve a child's compelled testimony against a parent. In In re Grand Jury Proceedings, 647 F.2d 511 (5th Cir. 1981), the opinion does not reveal whether the daughter, called as a witness, was a minor, was emancipated, or was living with her parents.

The court fails to cite a single case in which a court that has recognized its authority to grant testimonial privileges has undertaken a comparison of the competing values presented by a case such as this one, and concluded that the interest of the State in obtaining evidence is entitled to priority over the interests of children, families, and society that would be served by granting the privilege for which the plaintiffs contend. However, there is one recent case in which the court did balance the competing interests, and held that, as a matter of constitutional law, a child of any age may claim the parent-child privilege and refuse to appear and give any testimony whatsoever against his or her parent in any criminal proceeding. See In re Grand Jury Proceedings Witness: Agosto, 553 F. Supp. 1298 (D. Nev. 1983). The court reasoned that the government's interest in presenting all relevant evidence in criminal proceedings was outweighed by the individual's interest in the privacy of family communications and the family's interest in its integrity and inviolability. Maintaining the harmony and privacy of the family relationship, the court concluded, was just as compelling a goal as maintaining the harmony and privacy of the marriage relationship, which is protected by

the husband-wife privilege. *Id.* at 1325. The court emphasized that placing a child in the position of being "scorned and branded as disloyal if he does testify and jailed if he does not" would undermine the unity of the family and would risk grave psychological harm to the child. *Id.* at 1326. I do not consider that opinion unpersuasive here, although it goes beyond the necessities of the case before us. I would have ruled in this case that unemancipated minor children, living with their parents, should not be compelled either to appear or to testify, before a grand jury that is investigating the possible murder by their father of a nonfamily member.