IN THE MATTER OF A GRAND JURY SUBPOENA
(and a consolidated case).

Suffolk. September 14, 1999. - January 20, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Grand Jury. Privileged Communication. Witness,* Privilege. *Parent and Child,* Testimony by parent against child.

This court declined to recognize a testimonial privilege such that the parent of an unemancipated minor might not be compelled to testify, in criminal proceedings, regarding confidential communications between the minor child and the parent, stating that the social policies with respect to such a parent-child privilege should be weighed, in the first instance, by the Legislature. [593-600]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on July 2 and July 7, 1999.

The cases were reported by Ireland, J.

*Joseph J. Brodigan (Joseph Brodigan, Jr.,* with him) for a juvenile.

*John C. Koslowsky* for the parents.

*Daniel Bennett* for other parents.

*Tracey A. Cusick,* Assistant District Attorney (*Jeanmarie Carroll,* Assistant District Attorney, with her) for the Commonwealth.

*John R. McDonald, Jr.,* for another juvenile, was present but did not argue.

IRELAND, J. A single justice of this court has reserved and reported without decision the question whether we should create, on the basis of social policy considerations, a testimonial privilege for the parents of juveniles who have been subpoenaed to appear before a grand jury investigating the possible rape of another minor child by the juveniles.[1] Because we conclude that the Legislature, in the first instance, is the more appropriate

---

[1] We note at the outset that the petitioners have made no arguments that recognition of a privilege in these circumstances is required in order to protect

body to weigh the relative social policies and address whether and how such a privilege should be created; because the Legislature has not, to date, considered whether to create such a privilege; and because this case involves a number of competing legislative policies regarding children and families which also must be balanced,[2] we decline to create a privilege for parents at this time and on these facts.

We summarize the stipulated facts. Two boys, one age fourteen years and seven months, and the other age fourteen years and eight months, were eighth grade students at the same school in Braintree at the relevant time. Both boys had lived with their parents since birth. On June 13, 1999, the father of a fellow student telephoned the home of one of the boys. He spoke with the boy's mother and told her that her son had been involved in the rape of his daughter earlier that day. The parents of both boys subsequently communicated with their sons relative to the incident. On June 14, the complainant's father met separately with each boy's father and discussed the incident. On June 15, the Braintree police initiated an investigation into the incident. On June 17, the Braintree police contacted the parents of one of the boys to ask whether their son would come to the police station to answer questions. The boy's parents stated that they wanted to get an attorney. That same day, both boys were arrested by the Braintree police as a result of the rape allegations. On June 18, the two boys were arraigned in the Quincy Division of the District Court Department on charges of rape, kidnapping, assault and battery, and assault and battery by means of a dangerous weapon.[3]

On June 22, the district attorney for the Norfolk district subpoenaed both boys' parents to testify before the grand jury investigating the incident. The assistant district attorney indicated that she might ask questions at the hearing about the substance of communications the boys had with their parents.

the constitutional rights of the juveniles. Such a case would necessarily be on a different footing and would be decided under different standards. See notes 15 and 17, *infra*.

[2]See notes 15 and 16, *infra*.

[3]The stipulated facts do not specify whether either of the boys was ever questioned by the police, whether the two had attorneys present, or the substance of those conversations. Neither do the stipulated facts state who initiated the meetings between the fathers, or whether the boys' fathers revealed any portion of their conversations with their sons during their respective meetings with the complainant's father.

The boys and their parents moved in the Superior Court to quash the subpoenas, asserting a "child-parent privilege." The Superior Court judge denied the motions, noting that no such privilege currently exists in the Commonwealth. The Superior Court judge stayed enforcement of the subpoenas, however, so the parties could seek relief pursuant to G. L. c. 211, § 3.[4] On July 28, the single justice reserved and reported the consolidated cases for a determination by the full court.[5] The petitioners now ask the court to recognize a testimonial privilege such that the parent of a minor child may not be compelled to testify, in criminal proceedings, as to "confidential communications" from the minor child to the parent.[6] The Commonwealth counters that, if the requested parent-child privilege is to be created, the Legislature is the appropriate body to do so.

In *Three Juveniles* v. *Commonwealth*, 390 Mass. 357, 364 (1983) (*Three Juveniles*), noting that the creation of evidentiary privileges is most often left to the Legislature, we declined to

---

[4]We note that the judge's denial of the motions to quash applies to both mothers, but only one of the fathers.

[5]Ordinarily, an appeal such as this would be properly before this court only after a contempt proceeding. See Mass. R. Crim. P. 44, 378 Mass. 920 (1979); Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982). See also Mass. R. A. P. 4 (a), as amended, *post* 1603 (1999); Mass. R. A. P. 4 (b), as amended, 378 Mass. 928 (1979). Because this matter is of such significance, however, and because the Commonwealth explicitly waived this issue, we heard the case prior to such an adjudication. See Mass. R. A. P. 2, 365 Mass. 845 (1974).

[6]More particularly, one of the parents asks us to recognize a "parent-child privilege as to confidential communications of a minor child living in the home of his natural parent when the child has been accused of a crime." She does not specify who should hold the privilege.

The other parents ask us to recognize a privilege that "parents of an unemancipated minor child residing with them may not be compelled to testify concerning confidential communications in the context of criminal proceedings against the minor child," and that the child should be allowed to assert the privilege.

Although the petitioners now request a privilege only as to confidential communications, their prior actions indicate that they were previously seeking a much broader privilege — a privilege not to appear or testify at all. We take the petitioners' requests at face value and will decide the issue of privilege as to confidential communications. We do note, however, that unless disqualified, when subpoenaed, witnesses are required to appear before a tribunal and assert privilege in response to particular questions. Cf. *Rent Control Bd. of Cambridge* v. *Praught*, 35 Mass. App. Ct. 290, 296 (1993) ("The role of lawyer does not constitute a cloak of immunity against subpoena").

create a testimonial disqualification for minor children subpoenaed to appear before a grand jury investigating the possible murder of a nonfamily member by their father, at least as to "what the children may have seen and heard in nonconfidential circumstances." *Id.* at 364. We concluded that "the Commonwealth's interest in obtaining all relevant information concerning . . . [the crime charged] must predominate over generalizations favoring the preservation of the American family through barring a child from testifying about nonconfidential matters involving his or her parent." *Id.* Because it was not presented on the record, we declined to rule on the question of privilege as to confidential communications between parent and child, stating that "the question of a testimonial privilege as to such communications can be raised and dealt with in the specific circumstances presented [when the minors appear to testify]." *Id.* at 362 n.5.

Subsequent to our decision, the Legislature enacted a testimonial disqualification for minor children. See G. L. c. 233, § 20, Fourth, inserted by St. 1986, c. 145.[7] The statute prohibits minor children from testifying in criminal proceedings against natural or adoptive parents with whom the child resides, except when the victim of the crime also lives in the household and is a member of the parent's family. See *id.* The statute was enacted after various amendments, revisions, and a public hearing date, and the privilege that thus emerged had the benefit of public debate during its creation and definition.

The course we followed in *Three Juveniles* left the creation and definition of a broad, intrafamily testimonial privilege to legislative determination. We did so for good reason, and conclude that we should adhere, in the first instance, to that course in this case.

As we stated in *Three Juveniles*, *supra* at 359, "[t]estimonial

---

[7]General Laws c. 233, § 20, Fourth, inserted by St. 1986, c. 145, provides:

"An unemancipated, minor child, living with a parent, shall not testify before a grand jury, trial of an indictment, complaint or other criminal proceeding, against said parent, where the victim in such proceeding is not a member of said parent's family and who does not reside in the said parent's household. For the purposes of this clause the term 'parent' shall mean the natural or adoptive mother or father of said child."

privileges 'are exceptions to the general duty imposed on all people to testify.' *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5 (1982). *Matter of Pappas*, 358 Mass. 604, 607-609 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972). Such privileges diminish the evidence before the court (*Commonwealth* v. *Corsetti, supra*), and contravene the fundamental principle that 'the public . . . has a right to every man's evidence.' *United States* v. *Bryan*, 339 U.S. 323, 331 (1950), quoting 8 J. Wigmore, Evidence § 2192, at 64 (3d ed. 1940)." Although we have the authority to create privileges, it is "a power that we have exercised sparingly, and 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' " *Babets* v. *Secretary of Human Servs.*, 403 Mass. 230, 234 (1988), quoting *Three Juveniles, supra* at 359-360. See *Matter of Pappas, supra* at 609 (court will create privilege only when harm done to society by suppression of evidence outweighed by "benefits to society in general accruing from the preservation of a confidential relationship"). The question we must answer, therefore, when deciding whether we should recognize the requested privilege, is "whether the privilege against adverse [parent-child] testimony promotes sufficiently important interests to outweigh the need for probative evidence in the administration of criminal justice." *Three Juveniles, supra* at 360.

The petitioners argue that creation of this privilege promotes sufficiently important interests, such as to outweigh the need for probative evidence, because it is necessary to preserve and protect the family. Not only is forcing parents to testify against their children repugnant to our society, they argue, but it also will cause a breakdown of trust in the home, ultimately discouraging parent-child communications. Although the preservation of family harmony and communication is a valuable social goal, and forced incrimination of a close relative may be uncomfortable, these feelings and beliefs alone do not necessarily require the creation of a testimonial privilege.

To our knowledge, only one appellate court, with the authority to create privileges,[8] has considered whether a parent of an unemancipated minor child may be compelled to testify as to

---

[8]In *In re Terry W.*, 59 Cal. App. 3d 745, 747-750 (1976), a California court determined that a minor child could not prevent the compelled testimony of

confidential communications received from that child, in the context of criminal proceedings against that child, and reached a conclusion that a privilege did exist.[9] Other jurisdictions that have considered whether a parent-child privilege exists as to communications with adult children unanimously have rejected recognition of such a privilege, often expressing doubts about the privilege, or its absence, and its actual effect on parent-child communications, or have deferred to their respective Legislatures.[10] And while commentators generally have favored creation

his mother based on a parent-child privilege because the court concluded that it did not have the power to create privileges in the face of a statute which expressly limited recognition of privileges to the Legislature.

[9]See *Matter of Application of A & M*, 61 A.D.2d 426, 433-434 (N.Y. 1978) (noting that creation of privileges "devolves exclusively on the Legislature," but recognizing privilege, in circumstances of case, such that parents of sixteen year old boy could not be compelled to divulge communications made by their minor son, in the context of the familial setting for the purpose of obtaining parental guidance when all parties wished the communication to remain confidential, because society's interest in protecting the family outweighed its interest in fact finding and because of the existence of a private realm of family communication on which the State may not intrude). Subsequent decisions by two New York trial courts considering whether a privilege extended to communications with adult children or to a non-parent have resulted in varying results as to who is the holder of the privilege, who qualifies as a child, and who qualifies as a "parent." See *People v. Fitzgerald*, 101 Misc. 2d 712, 713-717 (N.Y. County Ct. 1979) (citing extensively to *A & M* case and holding that father of twenty-three year old son could not be compelled to testify as to conversation he had with son two days after the alleged crime, and further holding that both parent and child were required to waive privilege before father could testify); *Matter of Ryan*, 123 Misc. 2d 854, 855 (N.Y. Fam. Ct. 1984) (extending privilege to grandmother who had cared and provided for fifteen year old juvenile delinquent for most of his life). See also Note, Questioning the Recognition of a Parent-Child Testimonial Privilege, 45 Alb. L. Rev. 142, 144, 178 (1981) (noting that New York cases, by judicially creating privilege, highlighted contradictory results that emerge from case-by-case determination and usurped "the legislature's generally accepted function of creating testimonial privileges").

[10]See, e.g., *In re Grand Jury*, 103 F.3d 1140, 1143, 1146-1148, 1157 (3d Cir.), cert. denied sub nom. *Roe v. United States*, 520 U.S. 1253 (1997) (collecting cases and secondary sources; noting that academicians favor creation of some form of parent-child privilege but that no Federal Court of Appeals or State Supreme Court has recognized such a privilege for adult children; discussing lack of social benefits of privilege; and declining to create testimonial privilege for parent or adult child, preferring to leave recognition of privilege to Congress); *In re Erato*, 2 F.3d 11, 16 (2d Cir. 1993) (noting other Federal courts' refusal to recognize, and declining to recognize privilege to permit mother to avoid testifying against adult son regarding allegedly

of some such privilege, they have usually proposed legislative solutions, some of which vary widely in their scope and duration.[11]

criminal behavior from which mother apparently benefited); *State* v. *Willoughby*, 532 A.2d 1020, 1023 (Me. 1987) (holding no constitutional right of privacy directly or substantially impaired by refusal to recognize privilege of parents and sibling of adult criminal defendant not to testify); *State* v. *Maxon*, 110 Wash. 2d 564, 566 (1988) (holding no Federal or State constitutional basis for recognition of parental privilege, noting doubtfulness of proposed privilege's effect on family communications, and declining to create parental privilege to refuse to testify in criminal proceedings against adult child). But see *In re Grand Jury Proceedings (Greenberg)*, 11 Fed. R. Evid. Serv. 579, 582, 587 (D. Conn. 1982) (holding mother had privilege not to testify against adult daughter, as to incriminating statements only, and based on religious grounds only, no common-law privilege created). See also *Three Juveniles*, 390 Mass. 357, 361-362 n.4 (1983) (discussing New York cases and collecting decisions from other jurisdictions that declined to create broad privilege).

[11]See, e.g., Watts, The Parent-Child Privileges: Hardly a New or Revolutionary Concept, 28 Wm. & Mary L. Rev. 583, 619-622 (1987); Comment, Parent-Child Testimonial Privilege: An Absolute Right or an Absolute Privilege?, 11 U. Dayton L. Rev. 709, 730-734 (1986); Stanton, Child-Parent Privilege for Confidential Communications: An Examination and Proposal, 16 Fam. L.Q. 1, 58-61 (1982); Note, Questioning the Recognition of a Parent-Child Testimonial Privilege, 45 Alb. L. Rev. 142, 178 (1980).

Other commentators have argued in favor of judicial creation on a case-by-case basis. See, e.g., Comment, The Parent-Child Privilege, 1984 B.Y.U.L. Rev. 599, 617 (arguing that courts should consider on a case-by-case basis whether a particular family relationship outweighs the need for evidence); Comment, A Parent-Child Testimonial Privilege: Its Present Existence, Whether It Should Exist, and to What Extent, 13 Cap. U.L. Rev. 555, 605-607 (1984).

Additionally, some commentators have argued generally in favor of creating this privilege, either based on social policy or constitutional privacy concerns, but have not specified whom they believe is the appropriate body to create the privilege. See Note, Parent-Child Loyalty and Testimonial Privilege, 100 Harv. L. Rev. 910 (1987); Note, The Judicial Development of the Parent-Child Testimonial Privilege: Too Big for Its Britches?, 26 Wm. & Mary L. Rev. 145 (1985); Comment, Parent-Child Testimonial Privilege: Preserving and Protecting the Fundamental Right to Family Privacy, 52 U. Cin. L. Rev. 901 (1984); Comment, Underprivileged Communications: The Rationale for a Parent-Child Testimonial Privilege, 36 Sw. L.J. 1175 (1983).

Finally, some commentators have criticized the need for a privilege in general, or the creation of the privilege by the courts. See Comment, The Parent-Child Testimonial Privilege: A Survey of its Acceptance by the Courts, 19 Lincoln L. Rev. 123, 124 (1991) (noting "commentators have been unable to demonstrate any real harm to the family beyond the harm actually caused to a family when one of its members [is] alleged to have committed a criminal act"); Schlueter, The Parent-Child Privilege: A Response to Calls for Adop-

Deferring initially to the legislative process in this instance would accord with our general deference to the Legislature in the area of testimonial privileges. See *Babets* v. *Secretary of Human Servs.*, *supra* at 234 (stating that we have "consistently concluded that the creation of such privileges ordinarily is better left to the Legislature"). See also *Three Juveniles*, *supra* at 360. Indeed, the vast majority of evidentiary privileges have been created by the Legislature. See *Babets* v. *Secretary of Human Servs.*, *supra* at 235.[12] Furthermore, our deference to the Legislature on this privilege is particularly compelling because the decision whether to create the requested privilege necessarily depends on balancing vital, yet competing, social policies. Assuming that such a privilege would protect and promote family harmony and communication, this interest must be balanced

tion, 19 St. Mary's L.J. 35, 36-37, 53, 69 (1988) (noting lack of empirical data that privilege promotes family communication); Kraft, The Parent-Child Testimonial Privilege: Who's Minding the Kids, 18 Fam. L.Q. 505, 527, 532 (1985) (questioning actual effect of single judicial event on necessarily complex family relationships, and arguing that any right to family privacy outweighed when member of that family is suspected of visiting a concrete harm on the community).

[12]We have recognized very few common-law privileges. See *Foster* v. *Hall*, 12 Pick. 89, 97 (1832) (attorney-client privilege); *Worthington* v. *Scribner*, 109 Mass. 487, 498, 493 (1872) (government-informer privilege); *Phillips* v. *Marblehead*, 148 Mass. 326, 330 (1889) (deliberations on juror disqualification). See also *Commonwealth* v. *Maillet*, 400 Mass. 572, 575-576 (1987) (Legislature abolished common-law spousal privilege with enactment of statutory privilege in 1870); *Commonwealth* v. *Diaz*, 422 Mass. 269, 274 (1996) (declining to establish privilege equivalent to spousal privilege for people who live together but are not married); *Babets* v. *Secretary of Human Servs.*, 403 Mass. 230, 239 (1988) (declining to create executive branch privilege); *Matter of Pappas*, 358 Mass. 604, 612 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972) (declining to create news reporter's privilege). The Legislature, on the other hand, has created numerous privileges, some which defendants may assert and some which a victim or witness may assert. See G. L. c. 62C, § 74 (tax return preparer); G. L. c. 112, § 135A (licensed social worker); G. L. c. 112, § 172 (mental health or human services professional); G. L. c. 221, § 92A (sign language interpreter); G. L. c. 233, § 20, First and Second (spousal disqualification as to private conversations and general spousal privilege); G. L. c. 233, § 20, Fourth (minor child disqualified from testifying against parent in criminal proceedings against parent); G. L. c. 233, § 20A (members of clergy); G. L. c. 233, § 20B (psychotherapists); G. L. c. 233, § 20J (sexual assault victim's counsellor); G. L. c. 233, § 20K (domestic violence victim's counsellor); G. L. c. 233, § 21B (evidence of reputation of sex crime victim's sexual conduct); G. L. c. 233, § 23C (work product of mediator). See generally P.J. Liacos, Massachusetts Evidence §§ 13.1 et seq (6th ed. 1994 & 1994 Supp.).

against the interest in the ascertainment of truth and the just resolution of cases. In most instances, the balancing of such important and competing social interests is better left to elected representatives.[13] Likewise, once the broad social policy balancing is completed and a decision to create a testimonial privilege is made, the definition of that privilege will require extensive line drawing. Many sensitive subissues will need to be decided — issues such as who will hold the privilege[14]; who would determine whether a child should waive the privilege; whether biological, adoptive, foster, and de facto parents will be included; the age of the child to whom the privilege will extend; should there be any exceptions for crimes such as child abuse or intrafamily violence; when would the right commence; which conversations or activities would be privileged. As these questions illustrate, the creation and definition of a parent-child privilege is a complex task, necessitating not just the broad consideration and balancing of competing social goals involved in deciding whether to create the privilege, but also requiring

---

[13]See Comment, The Parent-Child Testimonial Privilege: A Survey of its Acceptance by the Courts, 19 Lincoln L. Rev. 127 (1991), quoting 23 C.A. Wright & K.W. Graham, Jr., Federal Practice and Procedure § 5422, at 673-674 (1980) ("In a society with egalitarian pretensions, the creation and justification of a privilege to refuse to respond to a judicial inquiry is essentially a political question; i.e., it is an allocation of the power as between the various components of the society"). Also, as we previously noted in *Babets* v. *Secretary of Human Servs.*, *supra* at 235 n.6, quoting *People* v. *Sanders*, 99 Ill. 2d 262, 271 (1983):

"The expansion of existing testimonial privileges and acceptance of new ones involves a balancing of public policies which should be left to the legislature. A compelling reason is that while courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truth-seeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make."

[14]See *In re Grand Jury*, 103 F.3d 1140, 1153-1154 (3d Cir. 1997) (noting that basis for the privilege, assurance of confidentiality to encourage children to communicate with their parents, is destroyed if it is waivable at the parent's option, and it would be intolerable State intrusion into family life if the privilege operated to silence parent when parent wished to testify).

the delicate consideration and balancing that is involved in defining the contours of such a privilege. In contrast to the judiciary, the Legislature would have available a whole array of resources and would be able to consider factors and circumstances that we may not.

The petitioners argue that in this case we should not await legislative action because the Legislature has already indicated a clear intent to protect families.[15] We agree with the petitioners that statutes such as G. L. c. 274, § 4 (exempting spouses, children, siblings, grandparents, and grandchildren from prosecution as accessory after fact); G. L. c. 233, § 20 (providing testimonial privilege in certain circumstances for spouses and minor children); and G. L. c. 119, §§ 55, 55A, 58, 67 (requiring parent or guardian notification and involvement in various juvenile delinquency proceedings), indicate a Legislative acknowledgment that families serve a special role in society and deserve unique protections. Contrary to the petitioners, however, we interpret the existence of these statutes to demonstrate that the Legislature is aware of and actively involved in the issues facing families today and that it is the appropriate body, in the first instance, to address whether and how any intrafamily testimonial privilege is to be created. Moreover, while we agree that the Legislature has indicated a special aim to protect children who have been accused of a crime and are involved in the juvenile justice system, the Legislature has also indicated an intent to protect children, such as the complainant,

---

[15]Pointing to case law and statutes, the petitioners also argue that, because parental participation is often required in juvenile criminal matters, creation of this privilege is urgently needed in order to protect the integrity of the juvenile justice system. See *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 134-135 (1983) (juvenile entitled to "meaningful consultation" with interested adult before waiver of rights is effective); G. L. c. 119, § 55 (requiring summons to issue to at least one parent of juvenile brought before court); G. L. c. 119, § 55A (requiring representation by counsel, or written waiver of counsel signed by parent or guardian, before juvenile may waive right to jury trial). Whether a parent or guardian serving in any of the above capacities could be required to answer, over the objection of the child, questions concerning the substance of conversations with a child pursuant to those obligations, is a question not presented on this record and one we do not address today. We note that, at a minimum, such questioning would raise serious issues regarding the privilege against self-incrimination or the right to counsel.

from abuse in general and sexual assault in particular.[16] Resolution and harmonization of these conflicting legislative policies belongs, in the first instance, to the Legislature, and we therefore decline to announce today the broad privilege requested by the petitioners.

In order to afford the Legislature an opportunity to address the issue, the stay on the subpoenas is continued until the conclusion of the January, 2000, legislative session. This stay is only effective insofar as the subpoenas relate to confidential communications between the juveniles and their parents. In the interim, the parents are required to appear before the grand jury and answer all questions unrelated to the substance or circumstances of the confidential communications. If the Legislature has not acted within the above time frame, the petitioners shall be afforded an opportunity to raise and argue in Superior Court any constitutional claims surrounding their confidential communications.[17]

*So ordered.*

---

[16]Compare G. L. c. 265, § 13B (indecent assault and battery on child under fourteen years punishable by ten years in State prison or two and one-half years in house of correction) with § 13H (indecent assault and battery punishable by five years in prison or two and one-half years in house of correction); G. L. c. 265, § 13J (b) (assault and battery on child under fourteen years with substantial bodily injury punishable by fifteen years in prison or two and one-half years in house of correction) with § 13A (assault and battery punishable by two and one-half years in house of correction or $500 fine); G. L. c. 265, § 22A (rape of child under sixteen years punishable by life in prison and may not be continued without finding or placed on file) with § 22 (rape punishable by life in prison); G. L. c. 265, § 24B (assault on child under sixteen years with intent to commit rape punishable by life in prison) with § 24 (assault with intent to commit rape punishable by twenty years in prison or two and one-half years in house of correction). See also G. L. c. 265, § 23 (rape and abuse of child under sixteen years [statutory rape] punishable by life in prison or house of correction and may not be placed on file or continued without a finding); G. L. c. 233, § 20, First and Second (exception to spousal testimonial disqualification and privilege in case of child abuse). See also *Commonwealth v. Licata*, 412 Mass. 654, 656-659 (1992) (fresh complaint doctrine).

[17]We do not preclude the possibility that particular confidential communications may be privileged under the Fifth Amendment to the United States Constitution or art. 12 of the Declaration of Rights of the Massachusetts Constitution.