### IN THE MATTER OF A GRAND JURY INVESTIGATION.

Suffolk. November 2, 2004. - December 14, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Grand Jury. Moot Question. Parent and Child,* Testimony by child against parent. *Privileged Communication. Witness,* Privilege.

A Superior Court judge properly denied motions to quash duces tecum summonses served on two minor children requiring them to testify against their father before a grand jury, where the children, who resided with their mother after their parents' separation, were not "living with" their father within the meaning of G. L. c. 233, § 20, Fourth, and, therefore, were not disqualified from testifying under that statute. [23-24]

A criminal defendant challenging the validity, on due process and equal protection grounds, of G. L. c. 233, § 20, Fourth, which provides a limited testimonial disqualification for minors at criminal proceedings involving parents with whom they reside, failed to demonstrate that the statute violated the fundamental rights of parents who do not live with their children, or that it was constitutionally invalid on the ground of disproportionate application. [24-26]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 16, 2004.

The case was reported by *Cowin,* J.

*Meaghan E. Barrett (John H. Brazilian* with her) for the children.

*Patricia A. Downey* for the father.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. In this case, we must decide whether a Superior Court judge properly denied motions to quash duces tecum summonses served on two minor children requiring them to testify against their father (father) before a grand jury. The judge stayed further grand jury proceedings to permit the children to seek relief pursuant to G. L. c. 211, § 3, and to avoid a situation in which the children would refuse to testify, thereby making them subject to contempt proceedings. A single

justice of this court concluded that review was appropriate, see *Matter of a Grand Jury Subpoena*, 430 Mass. 590, 592 n.5 (2000), and reserved and reported the case, without decision, to the full court. Subsequently, a grand jury returned indictments against the father (without the testimony of the children),[1] rendering the issue moot. We exercise our discretion to decide the case because the issue is one of significance, and one that will likely recur because the testimony of the children may be sought at the father's trial. See *Metros* v. *Secretary of the Commonwealth*, 396 Mass. 156, 159 (1985), and cases cited. We conclude that the judge properly denied the motions to quash.

The background of the case is as follows. The children are a seventeen year old boy and a fifteen year old girl who are the two elder children in a family of five children. Where it is appropriate to refer to the children separately, we shall call them "the son" and "the daughter." The parents of the children have been separated for fourteen months. The children, together with their siblings, live with their mother in Duxbury (marital home). The father lives in an apartment in Hull.

The complainants are sisters, ages fourteen and fifteen years. They are friends of the daughter and the father coached the elder complainant in soccer. The complainants allege that during a sleepover in the summer of 2004, the father provided them with alcoholic beverages, played a drinking game with them, and raped them. The incident is alleged to have occurred in the marital home when the father was babysitting the children for approximately one week while the mother was out of the country. The Commonwealth contends that the children were home at the time of the alleged incident.

The son and the daughter each filed a motion to quash a duces tecum summons served on them, on the ground that each is prohibited from testifying against their father pursuant to G. L. c. 233, § 20, Fourth.[2] The Commonwealth opposed the

---

[1] The grand jury returned indictments against the father, including nine indictments charging rape of a child by force, one charging assault with intent to rape, one charging indecent assault and battery on a child over the age of fourteen years, three charging furnishing alcohol to a person under the age of twenty-one years, and two charging drugging a person for sexual intercourse.

[2] General Laws c. 233, § 20, Fourth, inserted by St. 1986, c. 145, provides:

motions, arguing that G. L. c. 233, § 20, Fourth, did not prohibit or disqualify the children from testifying against their father because they did not live with him, as required by the statute. In response, the children filed a memorandum, supported by an affidavit of their mother. The mother's affidavit states the following. The mother and father have been separated for fourteen months. During that time, they attended counselling and attempted to reconcile their differences. The mother filed for divorce after learning of, and in reaction to, the charges against the father.

Although the children lived in the marital home with the mother following their parents' separation, the living arrangement was made to avoid disrupting their lives and was not made to limit the father's role in their lives. The mother remained in the marital home "largely for financial reasons" because her parents had provided a significant amount of money toward the down payment on the house and, for the last two years, had paid the mortgage on the house.

During the parents' separation, the father visited the marital home two to three times a week. The father spent an average of three nights a month sleeping at the house and at least one full weekend. He also spent many holidays with the children and the mother, and went on vacations with them.

The father remains actively involved in the lives of the children, participating in sporting events with them and taking them on outings. The father attended school, dance, and sporting events in which the children participated. The father "frequently" picked up the children from after-school activities. In sum, the father is an important and significant part of the lives of the children, and the mother maintains that to force the children to testify against their father "will be devastating to them and to [the] family."

---

"An unemancipated, minor child, living with a parent, shall not testify before a grand jury, trial of an indictment, complaint or other criminal proceeding, against said parent, where the victim in such proceeding is not a member of said parent's family and who does not reside in the said parent's household. For the purposes of this clause the term 'parent' shall mean the natural or adoptive mother or father of said child."

After argument, the judge denied the motions to quash on the ground that the children do not live with their father, and therefore, were not disqualified from testifying under G. L. c. 233, § 20, Fourth. The proceedings in the county court followed.

1. The disqualification in G. L. c. 233, § 20, Fourth, is afforded to minors at criminal proceedings, and it may be invoked if pertinent statutory criteria exist at the time the testimony is sought. With respect to this case, we inquire whether, when the children's testimony was sought (the date they were summonsed to testify before the grand jury), they lived with their father.[3]

2. The evolution of the disqualification contained in G. L. c. 233, § 20, Fourth, is explained in *Matter of a Grand Jury Subpoena*, 430 Mass. 590, 592-593 (2000). The statute was enacted after the decision in *Three Juveniles* v. *Commonwealth*, 390 Mass. 357, 364 (1983), cert. denied sub nom. *Keefe* v. *Massachusetts*, 465 U.S. 1068 (1984) (*Three Juveniles*), which declined to create a testimonial disqualification for minor children subpoenaed to testify about nonconfidential matters before a grand jury investigating the murder of a nonfamily member by their father and left the creation of any disqualification (or privilege) to the Legislature. *Id.* The Legislature's response was the enactment of G. L. c. 233, § 20, Fourth.[4]

We reject the arguments of the children: (a) that the judge too narrowly construed the phrase, "living with a parent," in G. L. c. 233, § 20, Fourth, thereby nullifying "the meaning and spirit" of the statute; and (b) that the phrase should be interpreted, "in light of the evolving nature of the family unit[,] to include families where the children do not live full time with both parents." "Testimonial privileges 'are exceptions to the

---

[3]General Laws c. 233, § 20, Fourth, contains other requirements that must be satisfied for the disqualification to apply. For instance, the complainant in the criminal proceeding cannot be a member of the parent's family and cannot reside in the parent's household. *Id.* The other statutory criteria are not at issue in this case.

[4]In *Matter of a Grand Jury Subpoena*, 430 Mass. 590, 590-591 (2000), the court left for consideration by the Legislature the additional issue whether a testimonial privilege should be created for parents of juveniles who had been subpoenaed to appear before a grand jury investigating the possible rape of another minor child by the juveniles.

general duty imposed on all people to testify.' " *Three Juveniles*, *supra* at 359, quoting *Commonwealth* v. *Corsetti*, 387 Mass. 1, 5 (1982). "Such privileges diminish the evidence before the court . . . and contravene the fundamental principle that 'the public . . . has a right to every man's evidence.' " *Three Juveniles*, *supra*, quoting *United States* v. *Bryan*, 339 U.S. 323, 331 (1950). "As such, they must be strictly construed . . . ." *Three Juveniles*, *supra*. On the facts of this case, the phrase "living with a parent" is not ambiguous, and in keeping with its ordinary meaning, see *Commonwealth* v. *Bell*, 442 Mass. 118, 124 (2004), only unemancipated, minor children who actually reside with the accused parent may invoke the disqualification (assuming the other requirements of the statute are satisfied). The children here lived with their mother in the marital home in Duxbury and did not live with their father in his apartment in Hull. To conclude otherwise would improperly extend the statute's application to circumstances involving parental visitation. See generally *Commonwealth* v. *Russ R.*, 433 Mass. 515, 523 (2001).

This conclusion does not violate the intent of the statute. "Although the preservation of family harmony and communication is a valuable social goal, and forced incrimination of a close relative may be uncomfortable, these feelings and beliefs alone do not necessarily require the creation of a testimonial privilege." *Matter of a Grand Jury Subpoena*, *supra* at 594. The Legislature weighed competing interests, no doubt taking into consideration the interest of protecting children "from abuse in general and sexual assault in particular." *Id.* at 600. While we recognize that living arrangements of parents and children in today's society can be diverse, and express no view on cases arising under the statute involving other facts, we reject the children's arguments, based on perceived statutory intent, that the statute should be broadly construed to apply to these facts.

3. The father, who was permitted to intervene on appeal, argues that G. L. c. 233, § 20, Fourth, is invalid on due process and equal protection grounds under both the Federal and State Constitutions because, by applying only to parents who live with their children, the statute violates the fundamental rights of

parents who do not live with their children.[5] The father essentially refers to notions of "family integrity" as being impermissibly burdened by the statute.

The statute does not infringe on the father's right to visit with his children or on his ability to participate in decisions concerning their upbringing, education, and care. See *Troxel* v. *Granville*, 530 U.S. 57, 66-67 (2000), and cases cited; *Blixt* v. *Blixt*, 437 Mass. 649, 656 (2002), cert. denied, 537 U.S. 1189 (2003). We are not involved with the disclosure of confidential communications between parent and child. See *Three Juveniles*, *supra* at 362 & n.5. The father has not established that the statute's classification implicates any fundamental right, thereby triggering a strict scrutiny analysis.

The statute "bears a reasonable relation to a permissible legislative objective," *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993), quoting *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 268 (1992). While the statute safeguards family relations, it is directed primarily at protecting children and child witnesses, because it affords the testimonial disqualification only to minor children, and not to parents. In view of legitimate State interests implicated by affording a testimonial disqualification, including promoting society's interest in ascertaining the truth in criminal proceedings and protecting child victims, the Legislature could permissibly confine the testimonial disqualification to identified minor children. The limited testimonial disqualification serves a legitimate State purpose by excusing the child witness who could be most affected by having to testify (namely a child living with an accused parent) because that child likely interacts closely with the suspected or accused parent on a daily basis and is the one most vulnerable to harm if made to testify. Any negative impact caused by the statute on the family is clearly supported by valid State interests and needs. The father has failed to show due process or equal protection violations based on "family integrity" concerns. See *Take Five Vending, Ltd.* v. *Provincetown*, 415 Mass. 741, 748 (1993).

The father cites to statistics compiled by the United States

[5]Our standard of review of the father's claims, under either the Federal or State Constitution, is the same. See *Blixt* v. *Blixt*, 437 Mass. 649, 652, 661 n.17 (2002), cert. denied, 537 U.S. 1189 (2003).

Census Bureau that state that of the 72,000,000 children in the United States, 3,000,000 children live only with their father while about 16,000,000 children live only with their mother. He also relies on a newspaper article, entitled Equal Access to Children After a Divorce, Boston Globe, Oct. 16, 2004, at A19, which he asserts alleges "a practice in the [Massachusetts] Probate Court of granting custody to mothers rather than fathers." He claims that these materials establish that the statute applies disproportionately to men, and, for this different reason, violates equal protection.[6]

The census bureau statistics offer nothing of material relevance. Nor do we accord any weight to the newspaper article. Under Massachusetts law, physical custody awards are to be made on a gender neutral basis, and each custody case is decided on its own circumstances with the child's or children's best interests in mind. The father has not shown that the statute is constitutionally invalid on the ground of disproportionate application. Cf. *Commonwealth* v. *King*, 374 Mass. 5, 16-17 n.10 (1977) (rejecting equal protection challenge to statute proscribing prostitution on ground that "discrimination exists because most prostitutes are women, and most customers are men").

*Order denying motions to quash duces tecum summonses affirmed.*

---

[6]The father cannot argue that the statute is facially discriminatory, because it applies only to minor children "living with a *parent*" (emphasis added). G. L. c. 233, § 20, Fourth.