NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12054


NANCY CHADWICK vs. DUXBURY PUBLIC SCHOOLS & others.[1]



Plymouth.     May 3, 2016. - October 4, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[2]



Privileged Communication.  Evidence, Privileged communication.
    Practice, Civil, Discovery.  Public Employment, Collective
    bargaining.  Labor, Collective bargaining.



    Civil action commenced in the Superior Court Department on
December 8, 2014.

    A motion to compel discovery was heard by Raffi Yessayan,
J.

    A question of law presented in a petition for leave to
prosecute an interlocutory appeal in the Appeals Court was
reported by Andrew R. Grainger, J.  The Supreme Judicial Court
on its own initiative transferred the case from the Appeals
Court.


    Jonathan J. Margolis (Beth R. Myers with him) for the
plaintiff.

_____

    [1] Karen Baynes, Andrew Stephens, and Marc Talbot.

    [2] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

John J. Cloherty, III, for the defendants.
The following submitted briefs for amici curiae:
Ava R. Barbour, of Michigan, Matthew D. Jones, Ira C. Fader, James A.W. Shaw, Jasper Groner, Haidee Morris, Matthew E. Dwyer, Eric P. Klein, & Katherine D. Shea for Massachusetts Teachers Association & others.
Paul T. Hynes & Michael R. Keefe for Professional Fire Fighters of Massachusetts.
Stephen J. Finnegan & Christopher J. Petrini for Massachusetts Association of School Committees, Inc., & another.

HINES, J.  In this appeal, we consider an issue of first impression:  whether an employer, in defense of a lawsuit alleging discrimination in employment filed by a union member, may demand communications between the union member and her union representatives or between union representatives acting in their official capacity.  The issue arises on interlocutory review of a discovery dispute in a Superior Court action brought by the plaintiff, Nancy Chadwick, alleging claims of discrimination and retaliation against the defendants.[3]  The plaintiff objected to certain of the defendants' discovery requests, asserting a "union member-union" privilege.  A Superior Court judge rejected the plaintiff's claim and entered an order compelling production of the requested discovery.  The plaintiff filed an application for relief under G. L. c. 231, § 118, and a single justice of the Appeals Court reported the issue to a panel of the Appeals

---

[3] The plaintiff claimed unlawful handicap discrimination, failure to provide reasonable accommodation, and retaliation.

Court.[4]  We transferred the case to this court on our own motion.

In her challenge to the defendant's discovery requests, the plaintiff concedes that a union member-union privilege has never been recognized in Massachusetts.  She argues, however, that G. L. c. 150E, the statute establishing the collective bargaining rights of public employees, should be interpreted to recognize a union member-union privilege and that such a privilege bars the employer's access to the requested discovery. We affirm the judge's ruling declining to recognize such a privilege, as we discern no legislative intent to incorporate within G. L. c. 150E a union member-union privilege extending beyond the labor dispute setting, and we decline to recognize the privilege under common law.

Background.  The following summary of the facts is drawn from the allegations in the plaintiff's complaint, the motion

---

[4] The plaintiff filed two applications for relief under G. L. c. 231, § 118, from the Superior Court judge's order compelling production of the communications.  In the first, she requested that a single justice of the Appeals Court recognize a privilege and remand for entry of a protective order.  The single justice affirmed the judge's order compelling production but allowed the plaintiff an opportunity to seek further review. In her second petition, the plaintiff requested that the single justice report the case to the full court.  In response, the single justice reported the issue to a panel of the Appeals Court.

judge's memorandum of decision and order on the defendants' motion to compel, and other relevant documents in the record.

1. The alleged discrimination and retaliation. Beginning in 2006, and continuing to her retirement in 2015, the plaintiff was employed as an English teacher at Duxbury High School. During her employment by the Duxbury public schools, the plaintiff was represented by the Duxbury Teachers Association, the local affiliate of the Massachusetts Teachers Association. She served as president of the Duxbury Teachers Association for six years, from 2010 to 2015.

In 1998, the plaintiff was diagnosed with posttraumatic stress disorder (PTSD), but she successfully managed the symptoms until 2009. After 2009, she experienced panic attacks, anxiety, hypervigilance, and disturbed sleep patterns, which she asserts were caused by work conditions, including bullying and harassment from her direct supervisor. In 2012, the plaintiff's attorney notified the school superintendent of her PTSD diagnosis and requested accommodation in the form of a replacement supervisor. In response, the school superintendent assigned the assistant principal to conduct the plaintiff's performance evaluation but declined to alter the subject-matter supervisor for the English courses that the plaintiff taught.

In December, 2013, and between March and May, 2014, the plaintiff and the defendants engaged in a series of interactions

that, according to the plaintiff, involved discrimination and retaliation against her.[5] On June 9, 2014, the plaintiff was placed on a "directed growth plan,"[6] a disciplinary action that permitted Duxbury public schools to dismiss her at the end of the 2014-2015 school year. The plaintiff commenced this lawsuit seeking monetary damages in December, 2014.[7]

2. The discovery requests. On January 5, 2015, the defendants served document requests and interrogatories pursuant to Mass. R. Civ. P. 26, as amended, 423 Mass. 1401 (1996), and

---

[5] In December, 2013, the assistant principal completed an evaluation that the plaintiff asserts contained false and unwarranted criticisms. In March, 2014, the plaintiff's immediate supervisor sent her an electronic mail (e-mail) message referencing errors the plaintiff allegedly made entering data in the school's electronic grading system. In May, 2014, the principal summoned the plaintiff to a meeting with the superintendent, the principal, the assistant principal, and the plaintiff's immediate supervisor regarding certain performance issues. The day of the meeting, the plaintiff's counsel delivered a letter to the superintendent, reminding him of her posttraumatic stress disorder diagnosis and requesting that the plaintiff's immediate supervisor limit contact with the plaintiff to group settings. The record does not indicate whether this request was allowed.

[6] Neither this document nor other letters and e-mail messages referenced in the background are contained in the record.

[7] In her complaint, the plaintiff asserted that she filed a complaint with the Massachusetts Commission Against Discrimination on June 24, 2014. The defendants denied the allegation and defended on the ground that the plaintiff has not exhausted administrative remedies. The details of this complaint are not in the record, and neither party has raised this as an issue in this appeal.

Mass. R. Civ. P. 33, as amended, 385 Mass. 1212 (1982), respectively.  On June 19, 2015, the plaintiff objected to certain of the discovery requests,[8,9] claiming a union member-

_____

[8] The plaintiff objected to the following interrogatories on the basis of an asserted union member-union privilege:

"Identify, by name, business address and telephone number, each person whom Plaintiff believes to have knowledge of any of the events alleged in this Complaint, and set forth the specific knowledge that each such person is believed to have."

"Set forth in full detail the sum and substance of any unrecorded oral statements you believe you may have made to the Defendant (or employees, or former employee, of the Defendant) concerning the Incidents alleged in the Complaint and, of the injuries (or damages) alleged in the Complaint, or which you intend to use for any purpose in the litigation."

"Identify (a) each person (other than Plaintiff's attorneys) with whom Plaintiff has discussed any of the Incidents alleged in his [sic] Complaint; (b) the date, place and means (e.g., telephone, face-to-face conversation, e-mail) of each such discussion; (c) the substance of each such discussion; and (d) any other persons who were present during each such discussion."

[9] The plaintiff objected to the following requests for document production claiming a union member-union privilege:

"Request:  All documents that Plaintiff provided to or received from her Union or Union representatives, including but not limited to the Massachusetts Teachers Association, at any time concerning Plaintiff's performance evaluations or performance reviews."

"Request:  All photographs, diagrams, depictions, videos, reenactments, sketches, drawings, tape recordings or other materials recorded and/or kept by Plaintiff that refer to the Incidents alleged in the Complaint."

union privilege.  At the request of the defendants, the plaintiff supplied a privilege log for ninety-two electronic mail (e-mail) messages withheld from disclosure.  The defendants filed a motion to compel production of the requested discovery, and the plaintiff responded with an opposition and cross-motion for protective order.[10]  The Superior Court judge declined the plaintiff's request to recognize a union member-union privilege and ordered the plaintiff to disclose all requested discovery withheld on the basis of an asserted union member-union privilege.  The judge acknowledged that some jurisdictions have recognized a union member-union privilege, but he concluded that the Legislature is the more appropriate body to weigh the policy implications of doing so and declined the plaintiff's request to create such a privilege.

Discussion.  The plaintiff seeks recognition of a union member-union privilege "that would protect from disclosure to

---

"Request:  Please provide copies of all electronic messages (i.e., emails, phone text messages or chat messages) sent or received by You that relates [sic] to the Incidents alleged in the Complaint in any way."

[10] The plaintiff asked that the judge rule on her motion for protective order as follows:

"The Plaintiff's Cross-Motion for a Protective Order with Respect to Communications with her Union is ALLOWED. Communications between the plaintiff and her union, union representatives or other members on matters of union business are privileged to the extent that they were not intended to be distributed to third parties."

employers communications between public sector employees and their unions when made (1) in confidence; (2) in connection with bargaining or representative services relating to anticipated or ongoing disciplinary or grievance proceedings; (3) between an employee (or the employee's attorney) and union representatives; or (4) by union representatives acting in official representative capacities."  Conceding that no such privilege exists under G. L. c. 150E, the plaintiff argues instead that we should interpret the statute as implying a union member-union privilege to secure the collective bargaining rights inherent in the statute.  More specifically, she contends that the prohibited practices in G. L. c. 150E, § 10 (a) (1) and (2), are vital to furthering the statute's purpose and that such prohibitions must extend beyond the context of collective bargaining disputes to protect employee and union interests.

1.  Standard of review.  The issue before us comes by way of a report for appellate review entered by a single justice of the Appeals Court.  Under G. L. c. 231, § 118, first par., a single justice of the Appeals Court has the authority to allow appellate review of an interlocutory order or a question of law contained therein.  CUNA Mut. Ins. Soc'y v. Attorney Gen., 380 Mass. 539, 540 (1980).  See Barnes v. Metropolitan Hous. Assistance Program, 425 Mass. 79, 84 (1997).  On review of a report by the single justice, we consider the merits of the

underlying order.  CUNA Mut. Ins. Soc'y, supra at 540, 544.  The issue whether the court should recognize a union member-union privilege as implicit in G. L. c. 150E is a pure question of law.  Thus, we accord "no deference to the judge's decision" declining to recognize the privilege.  See Barr Inc. v. Holliston, 462 Mass. 112, 114 (2012), quoting Sylvester v. Commissioner of Revenue, 445 Mass. 304, 308 (2005), cert. denied, 547 U.S. 1147 (2006) (reviewing interlocutory order reported for appellate review by judge of Superior Court).

2.  Statutory scheme.  We begin the analysis of the plaintiff's claim by reviewing the statutory language to determine if it reveals an unspoken legislative intent to create a union member-union privilege.  General Laws c. 150E grants public employees of the Commonwealth, as defined therein, the right to bargain collectively over "wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion."[11]  G. L. c. 150E, § 2.  As relevant here, it is a "prohibited practice for a public employer" to, among other things, (1) "[i]nterfere, restrain, or coerce any

---

[11] General Laws c. 150E, § 6, also includes "wages, hours, standards [of] productivity and performance, and any other terms and conditions of employment" in the topics subject to collective bargaining negotiations.

employee in the exercise of any right guaranteed under this chapter"; or (2) "[d]ominate, interfere, or assist in the formation, existence, or administration of any employee organization."  G. L. c. 150E, § 10 (a) (1), (2).  Considering the statutory scheme as a whole, its essential purpose is to protect the right of public employees to organize and to protect unions and their members from intrusion or control by the employer in the collective bargaining context.

To determine whether the Legislature intended that communications between a union member and a union representative be protected from disclosure to an employer in its defense against a civil action filed by an employee, "we look first to the language of the relevant statute, which is generally the clearest window into the collective mind of the Legislature." Holmes v. Holmes, 467 Mass. 653, 659 (2014), citing Commonwealth v. Nanny, 462 Mass. 798, 801-802 (2012).  "If the language of the statute is unambiguous, our function is to enforce the statute according to its terms."  Reading Co-Op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 547-548 (2013), citing Massachusetts Community College Council MTA/NEA v. Labor Relations Comm'n, 402 Mass. 352, 354 (1988).

We conclude that the privilege sought by the plaintiff is not implicit in G. L. c. 150E, § 10 (a) (1) and (2), because those provisions clearly are not intended to apply to a civil

action.  First, the dispute underlying the plaintiff's civil action is not related to "the formation, existence, or administration of any employee organization," as protected in G. L. c. 150E, § 10 (a) (2).  Although the plaintiff was president of her local union for six years, her lawsuit relates to allegedly discriminatory actions taken against her personally as an employee, not to matters encompassing union activity.  Neither is a privilege implicit in § 10 (a) (1), which provides that a public employer may not "[i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter" (emphasis added).  The rights provided under c. 150E protect collective bargaining and "lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection."  G. L. c. 150E, § 2.  Where the plain and unambiguous language of § 10 (a) (1) restricts its application to the collective bargaining context, we cannot say that, in securing that right, the Legislature contemplated a necessity to protect the confidentiality of union member-union communications in a private lawsuit brought by the union member against the employer.

Consistent with the statutory emphasis on protecting the right to collective bargaining, § 10 (a) (1) has been interpreted by the Massachusetts Labor Relations Commission to protect the confidentiality of communications between a union

and its members in labor disputes.[12]  See <u>Bristol County Sheriff's Dep't</u>, 31 M.L.C. 6, 17 (2004) (employer prohibited from asking union members, during internal affairs investigations, "overly-broad questions about the means and methods by which the Union was organizing the upcoming picket" because such organization "clearly falls within the realm of concerted activities protected under [G. L. c. 150E, § 2]).  See also <u>City of Lawrence & Lawrence Patrolmen's Ass'n</u>, 15 M.L.C. 1162, 1165-1166 (1988) (employer prohibited from demanding content of letter containing communications between union members and union administrator because subject matter protected whether written or oral).

A parallel provision in the National Labor Relations Act, 29 U.S.C. §§ 151 et seq. (2012), has been interpreted similarly by the National Labor Relations Board (board).[13]  In <u>Cook Paint &</u>

---

[12] This is the first case in the courts of the Commonwealth where the existence of a union-member privilege has been litigated, even though G. L. c. 150E was enacted in 1973, see St. 1973, c. 1078, §§ 1-8, and the concept behind protected collective bargaining has been recognized in a Massachusetts statute since 1937, see St. 1937, c. 436, §§ 1-15, and St. 1938, c. 345, § 2, inserting G. L. c. 150A.  The likely explanation for the dearth of cases raising the issue is the practice of the Massachusetts Labor Relations Commission, where many labor disputes are resolved, of protecting confidential communications between a union and its members from disclosure during labor disputes.

[13] Decisions of the National Labor Relations Board (board) are helpful for our analysis because the National Labor

Varnish Co. & Paintmakers & Allied Trades Local 754, 258

N.L.R.B. 1230 (1981) (Cook Paint), the board ruled that

compelled disclosure of communications between an employee and

his union steward during the grievance process violated the

prohibition against interfering, restraining, or coercing

employees in the exercise of their collective bargaining

rights.[14]  Id. at 1232, citing 29 U.S.C. § 158(a)(1).  The

communications sought in Cook Paint related to an incident where

an employee allegedly fell in a paint spill after notifying his

union representative of the spill and being advised to return to

regular duties while the representative sought out the floor

supervisor.  Id. at 1230.  As a result of the incident, the

employer decided to discharge the employee.  Id.  The board

relied on the facts that the union representative's involvement

_____

Relations Act, 29 U.S.C. §§ 151 et seq. (2012), contains
parallel provisions to G. L. c. 150E.  Specifically, the
prohibited employment practices in G. L. c. 150E, § 10 (a) (1),
(2), as cited by the plaintiff, are addressed in parallel
provisions of the National Labor Relations Act.  See 29 U.S.C.
§ 158(a)(1) (prohibited practice "to interfere with, restrain,
or coerce employees in the exercise of [collective bargaining]
rights"), and § 158(a)(2) (prohibited practice to "to dominate
or interfere with the formation or administration of any labor
organization or contribute financial or other support to it").

    [14] The board has also recognized that, for "collective
bargaining . . . to work, the parties must be able to formulate
their positions and devise their strategies without fear of
exposure.  This necessity is so self-evident as apparently never
to have been questioned."  Berbiglia, Inc., & Retail Store
Employees' Union, Local 782, 233 N.L.R.B. 1476, 1495 (1977).

"arose solely as a result of his status as union steward" and, after the union filed a grievance on behalf of the employee, the employer specifically sought contemporaneous notes taken by the representative in his capacity of carrying out union functions. Id. at 1231-1232.

In ruling that the employer impermissibly interfered with the employee's collective bargaining rights by demanding the substance of the conversations during the grievance process, the board reasoned that "consultation between an employee potentially subject to discipline and his union steward constitutes protected activity in one of its purest forms." Id. at 1232. The board specifically limited its ruling, emphasizing, "[T]his case does not mean that all discussions between employees and stewards are confidential and protected by the [National Labor Relations Act]. Nor does our decision hold that stewards are, in all instances, insulated from employer interrogation." Id.

Unlike proceedings that are directly connected to the collective bargaining context, the plaintiff here seeks a protective order in a civil lawsuit against her employer. Civil lawsuits are beyond the zone of protection for union rights contemplated in G. L. c. 150E. Therefore, the plain and unambiguous language of § 10 (a) (1) does not require that communications between union members and union representatives

be protected from interference by an employer defending itself from an employee's civil action.

3. Common-law privilege. Having concluded that there is no statutorily based privilege implicit in G. L. c. 150E, we now decline the plaintiff's request to judicially create such a privilege. Under Massachusetts law, a litigant or witness may not rely on a privilege to withhold evidence in a legal proceeding except as recognized by the "constitution, statute, rules promulgated by the Supreme Judicial Court, or the common law." See Mass. G. Evid. § 501 (2016). In the absence of a recognized privilege as set forth in § 501, this court has the power to create privileges, but "it is a power that we have exercised sparingly."[15] Babets v. Secretary of the Executive Office of Human Servs., 403 Mass. 230, 234 (1988), citing Three Juveniles v. Commonwealth, 390 Mass. 357, 360 (1983), cert. denied sub nom. Keefe v. Massachusetts, 465 U.S. 1068 (1984). Privileges are exceptions to the general duty imposed on a person to be a witness, disclose information, and produce writings. Matter of the Enforcement of a Subpoena, 463 Mass. 162, 166 (2012).

---

[15] Until we recognized a judicial deliberative privilege in Matter of the Enforcement of a Subpoena, 463 Mass. 162, 163 (2012), we had not recognized a common-law privilege since 1889. See Matter of a Grand Jury Subpoena, 430 Mass. 590, 597 n.12 (2000).

a.  The plaintiff's reliance on other jurisdictions.  The plaintiff relies principally on a recent case, Peterson v. State, 280 P.3d 559 (Alaska 2012) (Peterson), in which the Supreme Court of Alaska recognized a broad union-member privilege based on language in the State's Public Employment Relations Act.[16]  Id. at 564-565.  Peterson goes substantially beyond other jurisdictions that have considered the matter, and is the only case we have located where a court has judicially recognized such a privilege for civil lawsuits without relying on a State statute specifically protecting the same.[17]  The Supreme Court of Alaska held that "[a]ny attempt by the State to force disclosure of confidential communications between an employee and a union representative during a grievance proceeding would constitute an unfair labor practice" (emphasis

---

[16] Alaska's Public Employment Relations Act contains provisions similar to § 8 of the Federal act and to § 10 (a) of G. L. c. 150E.  See Peterson v. State, 280 P.3d 559, 565 (Alaska 2012), citing Alaska Stat. § 23.40.110.

[17] In Bell v. Village of Streamwood, 806 F. Supp. 2d 1052 (N.D. Ill. 2011), a judge of the United States District Court for the Northern District of Illinois adopted a portion of an Illinois statute granting a broad union-member privilege.  Id. at 1056, citing 735 Ill. Comp. Stat. 5/8-803.5.  The privilege recognized in that case protected communications made "(1) in confidence; (2) in connection with 'representative' services relating to anticipated or ongoing disciplinary proceedings; (3) between an employee and his union representative; (4) where the union representative is acting in his or her official capacity."  Id.  Conversely, the statute is not limited to communications relating to anticipated or ongoing disciplinary proceedings.  735 Ill. Comp. Stat. 5/8-803.5(a).

in original).  Id. at 565.  The communications at issue in Peterson developed during a grievance proceeding, but when the union and the State were unable to resolve the issue, the employee filed a civil suit claiming wrongful termination.  Id. at 561.  The court created a broad union-member privilege after reasoning that the "protection against forced disclosure of confidential union-related communications should not be lost if the grievance dispute is not resolved and the employee files a civil suit" because "the strong interest in confidential union-related communications" would otherwise be undermined.  Id. at 565.

Other jurisdictions that have analyzed this issue have declined to judicially create privileges that would apply to matters outside of grievance proceedings or disciplinary investigations.  The Supreme Court of New Hampshire, although recognizing that "an employer engages in an unfair labor practice when it compels a union representative to disclose confidential communications with a union employee" during a disciplinary investigation, declined to create a privilege that would apply in the context of a grand jury proceeding.  In re Grand Jury Subpoena, 155 N.H. 557, 560-561, 563 (2007).  The court reasoned that the petitioner "failed to show that the union relationship is so highly valued by an ordered society that its confidences warrant protection even at the cost of

losing evidence important to the administration of justice."
Id. at 563, quoting In re Grand Jury Subpoenas Dated January 20,
1998, 995 F. Supp. 332, 335 (E.D.N.Y. 1998).  Likewise, a
California court declined to recognize a union-member privilege.
In American Airlines, Inc. v. Superior Court, 114 Cal. App. 4th
881, 891 (2003), the court concluded that determination of the
"countervailing policy reasons why a union representative should
not be compelled during civil litigation to disclose factual
information obtained from other union members he or she
represents . . . is the province of the Legislature, not this
court" (emphasis in original).

b.  The Legislature's role.  In any event, the question
whether to create such a privilege is better left to the
Legislature.  The decision to create a privilege requires a
"balancing of the public's interest in obtaining every person's
[evidence] against public policy considerations in favor of
erecting a . . . privilege."  Three Juveniles, 390 Mass. at 364.
As to this issue, the Legislature may be in a better position to
decide whether to create a privilege and, if so, to weigh the
considerations involved in defining its contours.  See Matter of
a Grand Jury Subpoena, 430 Mass. 590, 598-599 (2000), S.C., 443
Mass. 20 (2004).  See also Babets, 403 Mass. at 235, quoting
McCormick, Evidence § 75, at 180 (3d ed. 1984) ("It may be
argued that legitimate claims to confidentiality are more

equitably received by a branch of government not preeminently concerned with the factual results obtained in litigation, and that the legislatures provide an appropriate forum for the balancing of the competing social values necessary to sound decisions concerning privilege").

Not only is the Legislature the more appropriate body to weigh policy considerations and the contours of any such privilege, this is not an appropriate case on which to judicially create such a privilege.  We have been "especially reluctant to create new privileges on the basis of speculation or conjecture as to the harms which may result from our failure to do so."  Babets, 403 Mass. at 238.  The record before us contains a privilege log listing a series of communications between the plaintiff and representatives and members of her union.  We do not know the content of those communications or the context in which they were made.  We do not know if they were made in a confidential setting or whether they were made to the union representative while acting in that role.  Without clarity in the record on these points, any harm to the plaintiff in declining her request to create a privilege is only speculative.

Conclusion.  We decline to create a union member-union privilege in this case, and we affirm the order below.[18]

So ordered.

---

[18] The only issue before us is whether a Massachusetts court should recognize a union member-union privilege.  Although we decline to recognize the privilege in the circumstances of this case, we do not address whether a protective order may be entered under Mass. R. Civ. P. 26 (c), as amended, 466 Mass. 1401 (2013).  A court has inherent powers to issue protective orders "to prevent abuses, oppression, and injustices," Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 213-214 (2011), quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984), and may exercise that power in appropriate circumstances involving communications between a union member and her union.